1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7
                        EASTERN DISTRICT OF CALIFORNIA
8
9   RACHHPAL SINGH SIDHU,            )  1:07-cv-00947-LJO-TAG-HC
                                     )
10              Petitioner,          )  FINDINGS AND RECOMMENDATIONS
                                     )  REGARDING PETITION FOR WRIT OF
11      v.                           )  HABEAS CORPUS  (Doc. 1)
                                     )
12  MICHAEL CHERTOFF, et al.,        )  ORDER DIRECTING THAT OBJECTIONS BE
                                     )  FILED WITHIN FIFTEEN DAYS
13              Respondents.         )
                                     )
14  _____ )
15

16          Petitioner, currently in the custody of the Bureau of Immigration and Customs

17  Enforcement ("ICE"), has, through counsel, filed a petition for writ of habeas corpus pursuant to

18  28 U.S.C. § 2241.  (Doc. 1).  The petition was originally filed in the Sacramento Division of this

19  Court on June 18, 2007, and transferred to the Fresno Division on June 29, 2007.  (Docs. 1, 5).

20  When the petition was filed, Petitioner was detained at the Lerdo Detention Facility, Bakersfield,

21  California, which lies within the jurisdiction of this Court.  (Id. at p. 2).

22                          **PROCEDURAL HISTORY**

23          Petitioner, a native of India, attempted to enter the United States on September 25, 2000.

24  (Id. at p. 3).  After an interview with authorities, Petitioner was paroled in October 2000, but later

25  served with a notice to appear and placed in removal proceedings.  (Id. at p. 5).  While he was in

26  removal proceedings, Petitioner's parole was revoked and he was returned to custody on or about

27  April 17, 2003.  (Id. at p. 6).  Petitioner applied for asylum but the Immigration Judge denied his

28  application, finding that Petitioner was not credible.  (Id.).  Lengthy litigation ensued, the precise

                                        1

details of which are not relevant to the issue of the legality of Petitioner's ongoing detention. The relevant facts are that Petitioner challenged the final order of removal by way of a petition for review, which is and has been pending in the United States Court of Appeals for the Ninth Circuit since before the petition in the instant habeas case was filed. (Id. at p. 8).[1]  In conjunction with Petitioner's petition for review, the Ninth Circuit granted a stay of removal until the appeals court proceedings are resolved. (Id.).

Petitioner was eventually returned to ICE custody on or about January 2, 2006, and has remained in custody since that date. (Id. at p.7).  ICE notified Petitioner in January 2007 that it was conducting a custody review of Petitioner. (Id. at p. 8).  On February 5, 2007, ICE issued a written decision denying Petitioner's release and informing him that the government of India "has issued a travel document for [Petitioner's] return to that country.  Your removal has been delayed solely through your filing of a Petition for Review with the US Court of Appeals for the Ninth Circuit, and the resulting automatic stay of removal." (Doc. 9-2, p. 2).[2]  The decision also advised Petitioner that he "must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal." (Id.).  A "Post Order Custody Review Worksheet" includes an "Officer Comments/Analysis & Recommendation" section stating that, while Petitioner did not have a criminal record nor did he "present a danger to the community," he nevertheless posed a significant flight risk based on his attempt to illegally enter the United States smuggled in the trunk of a car. (Doc. 9-2, p. 10).

On August 17, 2007, Respondent filed a response to the petition. (Doc. 9).[3]  On

---

[1]Petitioner's traverse indicates that Petitioner has two petitions for review pending before the Ninth Circuit, case nos. 06-75196 and 07-70341. (Doc. 13, p. 1).  The Court has reviewed the Ninth Circuit's electronic docket in those actions and notes that they have been consolidated and remain pending as of the date of these findings and recommendations.

[2]The document and page numbers refer to the document and page headers on the Court's electronic docketing system.  Doc. 9-2 is also identified as Attachment A to Respondent's response filed August 17, 2007.

[3]Although the Court's electronic docket lists Respondent's response as a "Response to Order to Show Cause," a further review of that docket does not indicate that this Court has issued an order to show cause in this case.  Rather, it appears that Respondent simply chose to file a response to the petition.

1   December 20, 2007, Petitioner filed his traverse.  (Doc. 13).   On February 14, 2008, Petitioner

2   filed a supplement to his legal arguments, appending several additional documents.  (Doc. 14).

3                                            **DISCUSSION**

4        **A.  Issues raised in the petition**

5             Both parties agree that, normally, once a final order of removal has been issued, during

6   the subsequent 90-day removal period, an alien's detention is mandatory pursuant to 8 U.S.C.

7   § 1231(a)(2).  (Doc. 9, p. 3; Doc. 1, p. 10).  Subsequently, the federal government has discretion

8   to detain an alien while arranging his removal, but such discretionary detention is subject to a

9   six-month presumptive reasonableness rule enunciated by the U.S. Supreme Court in Zadvydas

10  v. Davis, 533 U.S. 678, 701, 121 S.Ct. 2491 (2001).

11             This appears to be the only point of legal agreement between the parties.  When the

12  90-day period commences, whether it has expired and the subsequent extended detention period

13  has commenced, or whether some other legal basis for detention exists, are all disputed.

14  Respondent contends that Petitioner's detention is authorized pursuant to 8 U.S.C.

15  §1231(a)(1)(B)(i),[4] which confers on Respondent the discretion to extend detention when the

16

17        [4]8 U.S.C. § 1231(a) provides in relevant part as follows:
    (a) Detention, release, and removal of aliens ordered removed
18
    (1) Removal period
19  (A) In general
    Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove
20  the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
    (B) Beginning of period
21  The removal period begins on the latest of the following:
    **(i)** The date the order of removal becomes administratively final.
22  **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the
    court's final order.
23  **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from
    detention or confinement.
24  (C) Suspension of period
    The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such
25  extended period if the alien fails or refuses to make timely application in good faith for travel or other documents
    necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
26  (2) Detention
    During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal
27  period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or
    1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
28  (3) Supervision after 90-day period
    If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject

1   alien has acted to prevent his own removal.  (Doc. 9, p. 3).  Petitioner, on the other hand,

2   contends that Petitioner is under the discretionary detention of Respondent pursuant to 8 U.S.C.

3   § 1226(a),[5] but that Respondent has violated that statute by refusing to conduct a bond hearing.

4

_____

5   to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions
    requiring the alien--
6   (A) to appear before an immigration officer periodically for identification;
    (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
7   (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities,
    and other information the Attorney General considers appropriate; and
8   (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for
    the alien.

9
        [5]8 U.S.C. § 1226 provides as follows:
10
    (a) Arrest, detention, and release
11  On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether
    the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending
12  such decision, the Attorney General--
    (1) may continue to detain the arrested alien; and
13  (2) may release the alien on--
    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney
14  General; or
    (B) conditional parole; but
15  (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other
    appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without
16  regard to removal proceedings) be provided such authorization.
    (b) Revocation of bond or parole
17  The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section,
    rearrest the alien under the original warrant, and detain the alien.
18  (c) Detention of criminal aliens
    (1) Custody
19  The Attorney General shall take into custody any alien who--
    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
20  (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C),
    or (D) of this title,
21  (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been
    sentence[d] to a term of imprisonment of at least 1 year, or
22  (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
    when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation,
23  and without regard to whether the alien may be arrested or imprisoned again for the same offense.
    (2) Release
24  The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant
    to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a
25  potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family
    member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the
26  alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property
    and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in
27  accordance with a procedure that considers the severity of the offense committed by the alien.
    (d) Identification of criminal aliens
28  (1) The Attorney General shall devise and implement a system--
    (A) to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative resources

4

(Doc. 1, p. 17).  Petitioner contends that no basis exists for Petitioner's continued detention, that the manner of his arrival in the United States does not logically support a conclusion that he poses a flight risk, and that it is fundamentally unfair, as well as a due process violation, to effectively penalize him, through continued detention, for his decision to commence judicial review of his final order of removal.  (Doc. 1, pp. 18-19; Doc. 13, p. 2).   Petitioner also contends that the "reasonableness" standards of Zadvydas should apply to discretionary detentions pursuant to § 1226, such as the instant one.  (Doc. 1, p. 19).  Petitioner requests, inter alia, that this Court order Respondent "to immediately schedule the Petitioner for an individualized custody redetermination hearing...."  (Id. at p. 20).

For the reasons set forth below, the Court agrees with Petitioner that § 1226 is the source of Respondent's continued detention authority, but concludes that Respondent's exercise of discretion under § 1226 is authorized.  Nevertheless, under Ninth Circuit precedent, Respondent must provide Petitioner with a bond hearing before an Immigration Judge within a reasonable time in order to ensure that the government's basis for ongoing detention is justified.

**B.  Section 1226(a) is the source of authority for Petitioner's present detention**

"The statutory scheme governing the detention of ... aliens [awaiting the Ninth Circuit's decision on judicial review of a final order of removal] is not a model of clarity."  Prieto-Romero

---

of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;
**(B)** to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and
**(C)** which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.
**(2)** The record under paragraph (1)(C) shall be made available--
**(A)** to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien who was previously ordered removed and is seeking to reenter the United States, and
**(B)** to officials of the Department of State for use in its automated visa lookout system.
**(3)** Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.
(e) Judicial review
The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

1    v. Clark, 534 F.3d 1053, 1058 (9th Cir. 2008).  To determine whether Congress has authorized

2    the detention of such an individual, the Court "must first identify the statutory provision that

3    purports to confer such authority on the Attorney General.  This requires that [the Court] locate

4    [Petitioner] within the complex statutory framework of detention authority provided by Sections

5    236 and 241 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1226 and 1231."

6    Id. at 1057.

7            As the Ninth Circuit has explained, that task is a difficult one:

8            "The statutory scheme governing the detention of aliens in removal proceedings is
             not static; rather, the Attorney General's authority over an alien's detention shifts
9            as the alien moves through different phases of administrative and judicial review.
             This makes the task of determining where an alien falls within this scheme
10           particularly difficult for a reviewing court, because the Attorney General's
             authority over the alien can present a moving target.  The Attorney General's
11           authority over the alien at the time his habeas corpus petition is filed may differ
             from the authority at the time we hear oral argument on appeal, which may differ
12           in turn from the authority at the time our opinion is filed."

13   Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942, 945-946 (9th Cir. 2008).

14           In Prieto-Romero, the Ninth Circuit was presented with a fact situation virtually identical

15   to the instant case.  The petitioner had obtained a stay of removal from the Ninth Circuit in an

16   appeal that remained pending and challenged the Board of Immigration Appeal's affirmance of

17   his removal order.  534 F.3d at 1057.

18           As in this case, Prieto-Romero contended that the authority to detain him derived from

19   § 1226(a), under which the Attorney General has the discretionary authority to detain an alien

20   "pending a decision on whether the alien is to be removed from the United States," while the

21   federal government contended that the authority arises under § 1231(a), under which the

22   Attorney General has the authority to detain aliens "during" and "beyond" their "removal

23   period."  The distinction is significant because where the alien falls within the statutory scheme

24   can determine whether his detention is mandatory or discretionary and also may determine what

25   kinds of review processes are available to him.  Prieto-Romero, 534 F.3d at 1057.

26           Although both parties here make persuasive legal arguments for their respective

27   positions, the issue for this Court has been greatly simplified by the fact that the Ninth Circuit

28   has issued several cases since briefing concluded in this case, holding that, in circumstances such

6

as the instant one, § 1226(a), not § 1231(a), is the source of the Attorney General's detention

authority.  Prieto-Romero, 534 F.3d at 1059; Casas-Castrillon, 535 F.3d at 948.

Deriving its holding from the "plain language of the statute," the Ninth Circuit reasoned

that § 1231(a) cannot control because it applies to the period "during" and "beyond" the removal

period.  Prieto-Romero, 534 F.3d at 1059.  However, when the Ninth Circuit has issued a stay of

removal pending resolution of a court's judicial review of an alien's final order of removal,

"the removal period begins only after the court denies the petition and withdraws the stay of

removal."  Id. (Emphasis supplied).  Thus, since the removal period has yet to commence,

§ 1231(a) provides no authority to detain an alien subject to such a stay pending Ninth Circuit

review of a final order of removal.  Id.  The Ninth Circuit's holding, for purposes of this case,

could not be clearer:

> "We agree with Prieto-Romero and hold that § 1231(a) does not provide authority
> to detain an alien whose removal order is administratively final, but whose
> removal has been stayed by a court of appeals pending its disposition of his
> petition for review.  Such aliens may be detained, however, pursuant to § 1226(a),
> which allows the Attorney General to detain any alien 'pending a decision on
> whether the alien is to be removed form the United States.'"

Prieto-Romero, 435 F.3d at 1059.   The Ninth Circuit went on to explain that "only if we enter a

final order denying his petition for review will the statutory source of the Attorney General's

detention authority shift from § 1226(a) to § 1231(a)." Id. at 1062.

Accordingly, the Court concludes that, under clearly established Ninth Circuit precedent,

the Attorney General's authority to detain Petitioner derives from § 1226, not, as Respondent

maintains,  from § 1231.  Id.   Therefore, the issue remaining for this Court is whether

Petitioner's continued detention under § 1226 for a prolonged period of time is permissible.

**C.  Authorization to detain Petitioner under Section 1226(a)**

In Prieto-Romero, the alien contended that Congress did not intend to authorize

prolonged and indefinite detentions under § 1226, and that therefore the federal courts should

read into the statute an implicit limitation in the Attorney General's authority.  Id.  Prieto-

Romero also contended that the principles contained in Zadvydas v. Davis, 533 U.S. 678, should

apply to detentions under § 1226, thus precluding a detention he claimed was indefinite.

1    Prieto-Romero, 534 F.3d at 1062.[6]

2          The Ninth Circuit agreed in principal with the petitioner that if Zadvydas operated as a

3    constitutional limitation on the Attorney General's power under § 1231, absent any expressed

4    Congressional intent otherwise, it should also apply to detainees under § 1226:

5          "Therefore, without clear congressional direction to the contrary, we conclude that
           § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention.
6          Consistent with Zadvydas, we construe the Attorney General's detention authority
           under § 1226(a) as limited to the 'period reasonably necessary to bring about [an]
7          alien's removal from the United States,' even if continued detention in any
           particular litigant's case would not pose a constitutional problem."
8
     Prieto-Romero. 534 F. 3d at 1063.
9
10         However, even considering the constitutional concerns expressed in Zadvydas, the Ninth

11   Circuit went on to hold that Prieto-Romero's detention was not unlawful:

12         "Although his removal has certainly been delayed by his pursuit of judicial review
           of his administratively final removal order, he is not stuck in a 'removable-but-
13         unremovable limbo,' as the petitioners in Zadvydas were. (Citations omitted).
           Here there is no evidence that Prieto-Romero is unremovable because the
14         destination country will not accept him or his removal is barred by our own laws.
           Cf. Zadvydas, 533 U.S. at 697, 121 S.Ct. 2491.  To the contrary, the government
15         introduced evidence showing that repatriations to Prieto-Romero's country of
           origin, Mexico, are routine and that the government stands ready to remove
16         Prieto-Romero as soon as judicial review is complete.  Prieto-Romero does not
           dispute this evidence, but urges us to conclude that his detention is statutorily
17         unauthorized under Zadvydas because the government cannot demonstrate to any
           degree of certainty when Prieto-Romero's judicial review will end.  Therefore, he
18         argues, his ultimate deportation is a similarly 'unforeseeable' event, and his
           detention is likewise indefinite.
19
           It is true that Prieto-Romero's detention lacks a certain end date, but this
20         uncertainty alone does not render his detention indefinite in the sense the Supreme
           Court found constitutionally problematic in Zadvydas.  The Court emphasized that
21         the 'basic purpose' of the immigration detention is 'assuring the alien's presence
           at removal' and concluded that this purpose was not served by the continued
22         detention of aliens whose removal was not 'reasonably foreseeable.'  Id. at 699,
           121 S.Ct. 2491.  Removal was not reasonably foreseeable in Zadvydas because no
23         country would accept the deportees, or the United States lacked an extradition

24         _____

25         [6]In Zadvydas, the Supreme Court found that the habeas corpus statute grants federal courts the authority to
     determine whether post-removal-period detention is pursuant to statutory authority.  Zadvydas, 533 U.S. at 687.  In
     addition, the Supreme Court held that the Immigration and Nationality Act's ("INA") post-removal-period detention
26   statute does not permit indefinite detention, but instead "implicitly limits an alien's detention to a period reasonably
     necessary to bring about that alien's removal from the United States."  Id. at 689.
27         The Zadvydas Court established a "presumptively reasonable period of detention" of six months.  Id. at
     701.  The burden is on the alien to show that there is no reasonable likelihood of repatriation.  Id.  After six months,
28   and once an alien makes a showing that there is no "significant likelihood of removal in the reasonably foreseeable
     future, the Government must respond with evidence sufficient to rebut that showing."  Id.

1   treaty with their receiving countries."

2   Prieto-Romero, 534 F. 3d at 1063.

3       Thus, where the receiving country refused to accept the alien or where, as in the case of

4   Cuba, the United States had no diplomatic arrangement for removal, "the government's

5   purported interest in detaining an alien was severely diminished when there was no significant

6   likelihood that the alien *could be* removed."  Prieto-Romero, 534 F. 3d at 1064.

7       However, the Ninth Circuit distinguished such "removable-but-unremovable" situations

8   from those such as in Prieto-Romero and the instant case as follows:

9       "Prieto-Romero foreseeably remains *capable* of being removed-even if it has not
        yet finally been determined that he *should be* removed–and so the government
10      retains an interest in 'assuring [his] presence at removal....His continued
        detention, while lengthy, is not indefinite.  It remains authorized by § 1226(a)
11      because it is consistent with the implicit limitation that Zadvydas requires us to
        read into the Attorney General's statutory detention authority."
12
13  Prieto-Romero, 534 F. 3d at 1065.

14      The Court concludes that Prieto-Romero governs the disposition of this case.  Like

15  Prieto-Romero, Petitioner filed his federal habeas petition challenging his ongoing detention

16  while his petition for review challenging a final order of removal was pending before the Ninth

    Circuit.  Also like Prieto-Romero, the Government had in its possession travel documents from
17
    the country to which the alien will be removed.  Moreover, like Prieto-Romero, the United States
18
    does not have any laws barring removal to the country where removal is directed.  Thus, like
19
20  Prieto-Romero, Petitioner cannot contend that his detention is indefinite, even though it is

21  lengthy.  When the Ninth Circuit issues a ruling on his petition for review, and assuming that the

    appellate court denies relief, Petitioner will be removed to India shortly thereafter.[7]  Hence,
22
23  § 1226 confers on the Government the discretion to continue Petitioner's detention,

24  notwithstanding the fact that the detention is lengthy and that a date certain when Petitioner's

25  detention might end cannot be ascertained at this time.

26      [7]ICE's 2007 custody review of Petitioner indicates that Respondent was in possession of Indian Travel
    Documents that expired on April 11, 2007.  (Doc. 9-2, p.7).  However, that same review  indicates that the Travel
27  Documents could  "be quickly renewed if necessary."  (Id. at p. 10).  Thus, it appears that once the Ninth Circuit lifts
    the stay it imposed pending a decision on the petition for review, no further obstacles would stand in the way of
28  Petitioner's removal.

1          **D.  Bond hearing before an Immigration Judge**

2          The foregoing is not the end of the inquiry regarding the legality of Petitioner's detention.

3  As mentioned, the Ninth Circuit also concluded that the constitutional limitations announced in

4  Zadvydas should govern detentions under § 1226 as they do those under § 1231.  Prieto-Romero,

5  534 F.3d at 1067.  The Ninth Circuit held that even if an alien's continued detention is authorized

6  under § 1226(a), "due process requires 'adequate procedural protections' to ensure that the

7  government's asserted justification for physical confinement 'outweighs the individual's

8  constitutionally protected interest in avoiding physical restraint.'"  Id. at 1065(quoting Zadvydas,

9  533 U.S. at 690-691, 121 S. Ct. 2491).

10          Petitioner has contended variously that his two year detention during the pendency of his

11  appeal in the Ninth Circuit is inhumane (Doc. 13, p. 2), without "apparent reason," (Doc. 14, p.

12  2), and a violation of his substantive due process rights.  (Doc. 1, p. 18).  Petitioner argues that he

13  is entitled to an "individualized custody redetermination hearing" or, at the least, a determination

14  conducted under "standard bond principles as elucidated by the board of Immigration Appeals."

15  (Doc. 1, pp. 18, 20).  The Court construes Petitioner's request to be for a bond hearing rather than

16  for yet another file review by ICE, which has apparently been conducted each year since

17  Petitioner's detention in 2006.

18          In Casas-Castrillon, petitioner, a native and citizen of Columbian, had been a legal

19  permanent resident of the United States since 1990.  Casas-Castrillon, 535 F.3d at 944.  He was

20  detained by ICE in August 2001 following his release from a state prison for a conviction on an

21  auto burglary charge.  Id.  An Immigration Judge found that petitioner Casas was removable

22  because he had been convicted of two crimes of moral turpitude.  Id. at 945.  The Board of

23  Immigration Appeals affirmed the removal order in July 2002 and Casas was in the custody of

24  the federal government since that time.  Id.  At the time Casas filed his federal habeas petition, he

25  had pending before the Ninth Circuit a petition for review challenging the final order of removal.

26  Id.  Casas and the government "vigorously disputed" which statutory provision governed the

27  Attorney General's authority to detain petitioner.  Id.

28  ///

1    After a lengthy analysis, the Ninth Circuit, as it had in <u>Prieto-Romero</u>, rejected the

2 government's contention that § 1231(a) governed its detention authority, ultimately concluding

3 that § 1226(a) was the operative statute.  <u>Casas-Castrillon</u>, 535 F.3d at 947-948.  Casas

4 contended that his nearly seven year detention was prolonged and "potentially indefinite" and

5 that Congress had not statutorily authorized such a detention under § 1226(a).  <u>Id.</u> at 948.  The

6 Ninth Circuit, as it had in <u>Prieto-Romero</u>, rejected the notion that the detention of an alien

7 awaiting a ruling from the appeals court on his challenge to a final order of removal is

8 "indefinite."  <u>Id.</u> at 949.

9    However, the Ninth Circuit went on to address Casas' additional claim that the

10 government may not constitutionally undertake such a lengthy detention without providing him

11 with an individualized determination as to the necessity of his detention.  The Ninth Circuit first

12 acknowledged the constitutional implications, under <u>Zadvydas</u>, in detaining an individual under

13 § 1226(a) for a prolonged period of time.  <u>Casas-Castrillon</u>, 535 F. 3d at 950.   Then the Ninth

14 Circuit held that it need not reach the constitutional issue since it was clear, under principles of

15 statutory construction, that Congress had never intended for a long-term detention pursuant to

16 § 1226(a) to be authorized "without providing [the aliens] access to a bond hearing before an

17 immigration judge."  <u>Id.</u>  As the Ninth Circuit explained:

18    "[S]uch prolonged detention of aliens [under § 1226(a)] is permissible only where
      the Attorney General finds such detention individually necessary by providing the
19    alien with an adequate opportunity to contest the necessity of his detention.
      Section 1226(a), unlike § 1226(c), provides such authority for the Attorney
20    General to conduct a bond hearing and release the alien on bond or detain him if
      necessary to secure his presence at removal.  <u>See</u> § 1226(a)(2).  Because the
21    prolonged detention of an alien without an individualized determination of his
      dangerousness or flight risk would be 'constitutionally doubtful,' we hold that
22    § 1226(a) must be construed as *requiring* the Attorney General to provide the
      alien with such a hearing.  (Citation omitted).  Thus an alien is entitled to release
23    on bond unless the 'government establishes that he is a flight risk or will be a
      danger to the community.'"

24
<u>Id.</u> at 951 (citations omitted).
25
     The Ninth Circuit then noted that the record contained, as here, only an indication that the
26
petitioner had received a file review, and not an actual hearing before an Immigration Judge:
27
28    "It is not clear from the record whether Casas was even notified of this impending
      review or whether he was given an opportunity to contest the facts on which the

11

1  ICE officials based their decision.  There is no indication that he had a right to an
2  administrative appeal.  This review falls far short of the procedural protections
   afforded in ordinary bond hearings, where aliens may contest the necessity of their
3  detention before an immigration judge and have an opportunity to appeal that
   determination to the BIA." (Citations omitted).

4  Casas-Castrillon, 535 F. 3d at 951-952.  The Ninth Circuit then ordered that the writ of habeas

5  corpus be granted unless, "within 60 days, the government provides Casas with 'a hearing ...

6  before an Immigration Judge with the power to grant him bail unless the government establishes

7  that he is a flight risk or will be a danger to the community,' or shows that he has already

8  received such a bond hearing."  Id. at 952.

9      Here, as in Casas-Castrillon, the record is devoid of any indication that Petitioner has

10  previously been accorded a bond hearing before an Immigration Judge.  Like the petitioner in

11  Casas-Castrillon, the only indication in the record is that Petitioner has received periodic file

12  reviews from ICE.  The two-year detention of Petitioner without providing him any opportunity

13  to seek release on bond before an Immigration Judge, without requiring the federal government

14  to present evidence that Petitioner will in fact be a flight risk or a danger to the community, and

15  without providing any other meaningful safeguards, such as a right to judicial review of any

16  government decision to deny supervised release, cannot be reconciled with the Ninth Circuit's

17  interpretation of the scope of Respondent's statutory authority to continue to detain Petitioner for

18  such a span of time under § 1226(a).  As the Ninth Circuit explained it, "[t]here is a difference

19  between detention being *authorized* and being *necessary* as to any particular person."  Casas-

20  Castrillon, 535 F.3d at 949 (emphasis supplied).  Petitioner is entitled to an opportunity to

21  contest the necessity of his ongoing detention by ICE.

22                                  **RECOMMENDATIONS**

23      Accordingly, it is hereby RECOMMENDED that the petition for writ of habeas corpus be

24  GRANTED unless, within 60 days, Respondent provides Petitioner with a bond hearing pursuant

25  to 8 U.S.C. § 1226(a)(2) before an Immigration Judge with the power to grant him bail unless the

26  government establishes that he is a flight risk or will be a danger to the community, or shows that

27  he has already received such a bond hearing.

28  ///

1    These Findings and Recommendations are submitted to the United States District Judge

2  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of

3  the Local Rules of Practice for the United States District Court, Eastern District of California.

4  Within fifteen (15) days after being served with a copy of these Findings and Recommendations,

5  any party may file written objections with the Court and serve a copy on all parties.  Such a

6  document should be captioned "Objections to Magistrate Judge's Findings and

7  Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days

8  (plus three days if served by mail) after service of the objections.  The District Judge will then

9  review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

10  advised that failure to file objections within the specified time may waive the right to appeal the

11  District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12

13  IT IS SO ORDERED.

14  Dated:   **October 28, 2008**                              **/s/ Theresa A. Goldner**
                                                        UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28