# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHHPAL SINGH SIDHU,<br><br>        Petitioner,<br><br>   v.<br><br>MICHAEL CHERTOFF, et al.,<br><br>        Respondents. | 1:07-cv-00947-LJO-TAG-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER WITHDRAWING FINDINGS AND RECOMMENDATIONS DATED OCTOBER 30, 2008 (Doc. 16)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |

**PROCEDURAL HISTORY**

Petitioner, currently in the custody of the Bureau of Immigration and Customs Enforcement ("ICE"), through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The petition was originally filed in the Sacramento Division of this Court on June 18, 2007, and transferred to the Fresno Division on June 29, 2007. (Docs. 1, 5). At the time of filing of the petition, Petitioner was being detained at the Lerdo Detention Facility, Bakersfield, California, which lies within the jurisdiction of this Court. (Id. at p. 2).

Petitioner, a native of India, attempted to enter the United States on September 25, 2000. (Id. at p. 3). After an interview with authorities, Petitioner was paroled in October 2000, but later served with a Notice to Appear and placed in removal proceedings. (Id. at p. 5). After Petitioner's parole was revoked and he was returned to ICE custody, Petitioner applied for

1

asylum, but the Immigration Judge denied his application, finding Petitioner was not credible. (Id. at p. 6). Petitioner ultimately appealed the final order of removal to the United States Court of Appeals for the Ninth Circuit and that appeal has been pending in the Ninth Circuit since December 27, 2006. (Id. at p. 8). In conjunction with Petitioner's Petition for Review, the Ninth Circuit granted a stay of removal until the appeals court resolved the case. (Id.).

ICE notified Petitioner in January 2007 that it was conducting a custody review of Petitioner. (Id. at p. 8). On February 5, 2007, ICE denied release for Petitioner. (Id. at p. 10). The letter sent to Petitioner informing him of ICE's decision indicated that the government of India "has issued a travel document for [Petitioner's] return to that country. Your removal has been delayed solely through your filing of a Petition for Review with the US Court of Appeals for the Ninth Circuit, and the resulting automatic stay of removal." (Doc. 9, Exh. A). Petitioner was advised that he "must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal." (Id.). The decision also indicated that, while Petitioner did not have a criminal record nor did he "present a danger to the community," he nevertheless posed a flight risk based on his attempt to illegally enter the United States smuggled in the trunk of a car. (Id. at p. 10).

Petitioner filed the instant petition alleging two claims for relief: (1) that Petitioner's continued detention by Respondent violates 8 U.S.C. § 1226 because there has "been no showing that the Petitioner is subject to mandatory detention and there has been no determination, under standard bond principles as elucidated by the Board of Immigration Appeals, that the Petitioner should not be released on a reasonable bond"; and (2) that the Court should extend the principles of Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001) to detentions under § 1226 and determine whether Petitioner's lengthy detention violates his due process rights. (Doc. 1, pp. 17–20). Petitioner requests relief in the form of an order issuing from this Court to require Respondent to "immediately schedule the Petitioner for an individualized custody redetermination hearing." (Doc. 1, p. 20).

On August 17, 2007, Respondent filed a response to the petition. (Doc. 9).[1] On December 20, 2007, Petitioner filed his traverse. (Doc. 13). On February 14, 2008, Petitioner filed a supplement to his legal arguments, appending several additional documents. (Doc. 14). On October 30, 2008, the Court issued findings and recommendations requiring that Respondent permit Petitioner to have a bond hearing before the appropriate Immigration Judge within sixty days. (Doc. 16). In the findings and recommendations, the Court rejected Respondent's argument that Petitioner was properly detained under 8 U.S.C. § 1231(a)(1)(B), concluding instead that Petitioner was actually being held pursuant to 8 U.S.C. § 1226. Relying on the Ninth Circuit's then-recent decisions in Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008) and Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008), the Court concluded that detention pursuant to § 1226 was discretionary and that Respondent was obligated to provide Petitioner with the opportunity to appear before an Immigration Judge to determine whether he could be released on bond. (Id.). The findings and recommendations provided that any objections should be filed within fifteen days, or by November 17, 2008.

On November 19, 2008, two days _after_ the expiration of the objection period but before the District Judge had adopted the Magistrate Judge's findings and recommendations, Respondent filed objections in which Respondent, for the first time, argued that Petitioner was being held as an "arriving alien" and that the Immigration Judge lacked authority to conduct a bond hearing to redetermine the custody status of that individual. (Doc. 18, p. 4). Respondent also informed the Court that a bond hearing had been held on November 18, 2008, but that the Immigration Judge had refused to proceed with the hearing upon the judge's determination that Petitioner was an arriving alien. (Id.).

///

---

[1] Although the Court's electronic docketing system lists Respondent's Response as a "Response to Order to Show Cause," a further review of that docket does not indicate that this Court has ever issues an Order to Show Cause in this case. Rather, it appears that Respondent simply chose to file a response to the petition before the Court had preliminarily screened the petition. This is unfortunate because, in the normal course of screening petitions for detained aliens, the Court, in issuing an order to show case, would require Respondent to file with the Court a complete copy of Petitioner's Alien file ("A-file"), which presumably would have contained the information that was tardily presented to the Court by Respondent in the objections to the findings and recommendations of the Court.

3

On December 9, 2008, the Court ordered Petitioner's counsel to file a brief responding to Respondent's argument that Petitioner was an arriving alien. (Doc. 19). On December 22, 2008, Petitioner, not his counsel, filed a brief that made two points: (1) neither Prieto-Romero nor Casas-Castrillon contained any mention of "arriving aliens," and (2) the Immigration Judge did not adjourn the hearing because he had classified Petitioner as an arriving alien but because the findings and recommendations of the Court had not been adopted by the District Judge and thus were not final. (Doc. 20).

On December 29, 2008, Respondent filed a reply to Petitioner's response in which Respondent provided the Court, for the first time, with documents pertaining to Petitioner's original detention by authorities in 2000, including a transcript of the interview with Petitioner the day after his apprehension at the United States-Mexico border, and, again for the first time, argued that because Petitioner was an arriving alien, he was not entitled to a bond hearing. (Doc. 21).

## DISCUSSION

**A. Issues Raised In The Petition.**

Both parties agree that, normally, once a final order of removal has been issued, during the subsequent 90-day removal period, an alien's detention is mandatory pursuant to 8 U.S.C. § 1231(a)(2). (Doc. 9, p. 3; Doc. 1, p. 10). Subsequently, the federal government has discretion to detain an alien while arranging his removal, but such discretionary detention is subject to a six-month presumptive reasonableness rule enunciated by the U.S. Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 2505 (2001).

However, this is the only issue on which the parties agree. In the original Response, Respondent contended that Petitioner's detention is authorized pursuant to 8 U.S.C. § 1231(a)(1)(B)(i),[2] which confers on Respondent the discretion to extend detention when the

---

[2] 8 U.S.C. § 1231(a) provides as follows:
(a) Detention, release, and removal of aliens ordered removed
(1) Removal period
(A) In general
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove

4

alien has acted to prevent his own removal.  (Doc. 9, p. 3).  Petitioner, on the other hand, contended that he was under the discretionary detention of Respondent pursuant to 8 U.S.C. § 1226(a),[3] but that Respondent hds violated that statute by refusing to conduct a bond hearing.

---

the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
(B) Beginning of period
The removal period begins on the latest of the following:
**(i)** The date the order of removal becomes administratively final.
**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
(C) Suspension of period
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
(2) Detention
During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
(3) Supervision after 90-day period
If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--
**(A)** to appear before an immigration officer periodically for identification;
**(B)** to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
**(C)** to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
**(D)** to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

[3]8 U.S.C. § 1226 provides as follows:

a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General--
**(1)** may continue to detain the arrested alien; and
**(2)** may release the alien on--
**(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
**(B)** conditional parole; but
**(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.
(b) Revocation of bond or parole
The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
(c) Detention of criminal aliens
(1) Custody
The Attorney General shall take into custody any alien who--
**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(Doc. 1, p. 17). Petitioner contended that no basis exists for Petitioner's continued detention, that the manner of his arrival in the United States did not logically support a conclusion that he posed a flight risk, and that it was fundamentally unfair, as well as a due process violation, to effectively penalize him, through continued detention, for his decision to commence judicial review of his final order of removal. (Doc. 1, pp. 18-19; Doc. 13, p. 2). Petitioner also contended that the "reasonableness" standards of <u>Zadvydas</u> should apply to discretionary detentions pursuant to § 1226. (Doc. 1, p. 19). Petitioner requested, inter alia, that this Court order Respondent "to immediately schedule the Petitioner for an individualized custody

---

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
(2) Release
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.
(d) Identification of criminal aliens
**(1)** The Attorney General shall devise and implement a system--
**(A)** to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;
**(B)** to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and
**(C)** which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.
**(2)** The record under paragraph (1)(C) shall be made available--
**(A)** to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien who was previously ordered removed and is seeking to reenter the United States, and
**(B)** to officials of the Department of State for use in its automated visa lookout system.
**(3)** Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.
(e) Judicial review
The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

redetermination hearing...." (Id. at p. 20).

**B. Issues Raised In The Objections To Findings And Recommendations Filed On October 30, 2008**.

Subsequent to the issuance of the findings and recommendations on October 30, 2008, Respondent took an entirely new tack by arguing that Petitioner could not legally receive a bond hearing because he was an "arriving alien," supporting that contention with evidence that the Immigration Judge had adjourned the bond hearing on November 18, 2008 precisely because the judge had determined that he lacked jurisdiction to proceed because of Petitioner's status as an arriving alien. (Doc. 18). Petitioner, on the other hand, contends that the Court was correct in construing § 1226 to be the source of Petitioner's detention and in relying on Casas-Castrillon and Prieto-Romero to require a bond hearing. (Doc. 20). Petitioner notes that neither Ninth Circuit case mentions arriving aliens and that the only reason the Immigration Judge adjourned the bond hearing was to await the adopting of the Court's findings and recommendations before making a bond determination. In a reply to Petitioner's response, Respondent provided documents that indicate Petitioner has indeed been classified as an arriving alien upon his initial detention in 2000.

For the reasons set forth below, the Court finds that Petitioner is an arriving alien and that federal law excepts arriving aliens from the authority of Immigration Judges to conduct bond hearings. Accordingly, the Court orders the withdrawal of the October 30, 2008 findings and recommendations and issues herein these new findings and recommendations recommending denial of the petition.

**C. Petitioner Is An Arriving Alien**.

    1. Factual Context Of Petitioner's Initial Detention.

In Respondent's reply in support of objections to findings and recommendations, Respondent, for the first time, has provided documents detailing Petitioner's initial detention by Respondent. The documents establish the following chronology.

On September 25, 2000, Petitioner was detained by U.S. authorities at the San Ysidro, California border crossing from Tijuana, Mexico. (Doc. 21, p. 4). The following day, an

immigration officer conducted an interview with Petitioner in which the following transcribed colloquy occurred:

> Q: How did you attempt to enter the United States?
>
> A: In the trunk of a car.
>
> Q: When did you attempt to enter into the United States?
>
> A: Yesterday (September 25, 2000).
>
> Q: How much did you pay the person to attempt to smuggle you into the United States?
>
> A: From India to Mexico it was $18,000 (U.S. Dollars). And from Tijuana to here I would have to pay $500.00.
>
> Q: Did you know it is illegal to enter without inspection into the United States?
>
> A: Yes.
>
> Q: When did you depart India?
>
> A: Twelve months ago.
>
> Q: From India where did you go?
>
> A: To Africa.
>
> Q: From Africa where did you go?
>
> A: After six or seven months we went to Guatemala.
>
> Q: What country were you in Africa?
>
> A: Kenya.
>
> Q: From Guatemala where did you go?
>
> A: To Mexico.
>
> Q: How did you enter Mexico?
>
> A: We crossed the river.
>
> Q: Did you enter illegally into Mexico?
>
> A: Yes.
>
> Q: When did you arrive in Tijuana, Mexico?
>
> A: About seven to eight days ago.
>
> Q: If your entry were successful in the United States, where did you want to go?

1          A: Anywhere in California I wanted to work.

(Doc. 21, pp. 4-5).

Petitioner later indicated to the officer that in India he and his family belonged to a minority political party that had been repeatedly harassed by the dominant political party and that he had been told he would be killed if he returned to his home. (Id. at p. 5).[4]

Petitioner signed a copy of the transcript of his interview. (Id. at p. 5). In a document dated September 26, 2000, the immigration officer issued a notice to appear for removal proceedings against Petitioner. (Id. at p. 7). In the notice to appear, the issuing officer designated Petitioner as an "arriving alien." The officer also noted that an asylum officer had determined that Petitioner had demonstrated "a credible fear of persecution or torture" if returned to India. (Id.).

### 2. Law Regarding Arriving Aliens.

The Code of Federal Regulations provides as follows:

> Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act....

8 C.F.R. § 235.3(d).

The Code of Federal Regulations further provides as follows:

> ...[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following class of aliens:
>
> (A) Aliens in exclusion proceedings;
>
> (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act....

8 C.F.R. § 1003.19(h)(2)(I).

### 3. Analysis.

Here, the immigration officer who originally interviewed Petitioner determined that he

---

[4]The documents appended to the petition indicate that Petitioner subsequently sought asylum but was ultimately denied asylum based on the conclusion of the Immigration Judge, later upheld by the Board of Immigration Appeals, that although Petitioner may have entertained a well-founded fear of persecution based on past persecution, "the evidence in the record demonstrates a change in country conditions such that the [Petitioner] no longer has a well-founded fear of future persecution in India." (Doc. 1, Exh. 2, p. 15).

9

was an arriving alien and placed him in removal proceedings by serving him with a Notice to Appear. ICE determined that Petitioner should be retained in custody because he presented, in ICE's view, a "significant flight risk" and because he had attempted to delay his removal through "multiple filings with the Ninth Circuit Court of Appeals." (Doc. 9, pp. 10-11).[5] An Immigration Judge may not redetermine the status of an arriving alien, such as Petitioner, that has been imposed by Respondent. 8 C.F.R. § 1003.19(h)(2)(I).[6]

Accordingly, the Court concludes that an Immigration Judge does not have jurisdiction to conduct a bond hearing regarding an arriving alien such as Petitioner. Since that is the only relief sought by Petitioner, his petition should be denied.

However, Petitioner has also raised the question of a due process violation stemming from his lengthy detention by ICE. Petitioner argues that the due process considerations enunciated in Zadvydas should be extended to someone held in custody pursuant to 8 U.S.C. § 1226. (Doc. 1, pp. 17-20). In the Court's original findings and recommendations, this issue was paramount because, based on the evidence then in the record, the Court had concluded that Petitioner was indeed being held pursuant to § 1226, and, further, that Zadvydas' due process principles should be extended to someone detained under § 1226, as prescribed by the Ninth

---

[5] The record is not clear concerning the date on which Petitioner was first taken into custody or whether his custody has been continuous and uninterrupted since October 26, 2000. The record does indicate that on April 17, 2003, the Immigration Judge was notified by ICE's precursor, the Immigration and Naturalization Service ("INS"), that Petitioner's parole had been revoked and that he was currently in INS custody. (Doc. 1, Exh. 2, p. 1). The record further indicates that, following a series of court proceedings before the Immigration Judge and the Board of Immigration Appeals, eventually resulting in Petitioner's appeal to the Ninth Circuit, ICE served Petitioner with notice on February 12, 2007 that it had reviewed his custody status and determined that he would not be released from ICE custody at that time. (Doc. 1, Exh. 3, p. 21).

[6] Although an Immigration Judge can determine whether a person is properly included within several categories under federal immigration statutes, that of an arriving alien is not among them. 8 C.F.R. 1003.19(h)(2)(ii). See Garza-Garcia v. Moore, 539 F.Supp.2d 899, 902, 906-907 (S.D. Tex. 2007). The plain language of the regulations not only expressly excepts an arriving alien from those classes of aliens for which Immigrations Judges may conduct bond hearings, but they also expressly exclude such arriving aliens from those classes that may even challenge the *correctness* of their classification as an arriving alien. Although at least one federal court has held that such a total exclusion of arriving aliens from judicial or administrative review is arbitrary and that due process requires that arriving aliens at a minimum be permitted to challenge their designation as such, see Garza-Garcia, 539 F.Supp.2d at 906-907, the Court need not address this precise issue because Petitioner has never challenged his status as an arriving alien and does not now seek a hearing before an Immigration Judge to determine whether he was properly classified as an arriving alien. Instead, he challenges ICE's custody decision. As discussed above, that decision cannot be re-determined by an Immigration Judge in a bond hearing.

Circuit in Casas-Castrillon and Prieto-Romero.

However, now that the record has been supplemented to establish that Petitioner is being held as an arriving alien, the Court's reasoning regarding the applicability of Zadvydas' due process analysis to § 1226, is entirely inapposite. Absent Ninth Circuit or United States Supreme Court authority that Zadvydas' principles apply to arriving aliens--a position that has never been asserted by Petitioner--the Court will not summarily extend Zadvydas to a situation never discussed in that case when neither party here has ever argued that Zadvydas is applicable to such circumstances.

In his opposition to Respondent's objections raising the issue of Petitioner as an "arriving alien," Petitioner argues that the Court should reject the objections because they were filed late. More specifically, Petitioner contends that Respondent's counsel's declaration supporting the objections misrepresents the facts surrounding why the objections were not timely filed. According to Petitioner, the Immigration Judge did not adjourn the bond hearing because of his finding that Petitioner was an arriving alien and that he lacked jurisdiction to proceed, but rather, he adjourned the hearing to await the adoption of the October 30, 2008 findings and recommendations as the Court's final order. (Doc. 20, p. 3). Petitioner acknowledges that the Immigration Judge expressed "concerns" about his jurisdiction over the bond but "agreed that those concerns would be moot upon the District Court's adoption of the Magistrate Judge's Findings and Recommendations." (Id.).

This position makes little sense. The Immigration Judge's jurisdiction, or lack thereof, to conduct a bond hearing for Petitioner derives from federal statutes and regulations governing arriving aliens. Unless this Court's October 30, 2008 findings and recommendations were premised upon a construction of those very statutes and regulations so as to confer on the Immigration Judge that jurisdiction and expressly extend those laws to cover arriving aliens, then the October 30, 2008 findings and recommendations would not have any effect on whether the Immigration Judge had authority to conduct such a hearing. Since the October 30, 2008 findings and recommendations did not even address Petitioner's status as an arriving alien, it would be nonsensical for the Immigration Judge to have adjourned the bond hearing to await finality of

findings and recommendations that did not address in any way his authority to conduct such a proceeding.

Petitioner goes on to describe a scenario in which Respondent intentionally withheld raising the issue of the "arriving alien" until it became apparent that the Immigration Judge was seriously considering granting Petitioner's release on bond. At that point, according to Petitioner's scenario, Respondent "scrambled" to prepare objections that were tardily filed. (Doc. 20, p. 3).

While Petitioner and his counsel may seriously believe such a scenario, it is based almost entirely on biased speculation, weak or unsupported inferences, and outright guesses. The record speaks for itself. This Court ordered a bond hearing, which was commenced but adjourned. Objections were filed, albeit tardily, by Respondent, raising the issue of jurisdiction of the Immigration Judge to conduct such a hearing. In considering the merits of those objections, the Court will not, and need not, speculate on the motives of Respondent for proceeding in the way he has. For our purposes, it is enough that the issue has been raised and that it has merit.

In a variation of the scenario described above, Petitioner also contends that the "arriving alien" issue is a "red herring" because Respondent has never before raised this issue, and that he has in fact taken a contrary position. (Doc. 20, p. 4). Petitioner argues that in earlier filings, Respondent contended that Petitioner's release had been denied not because Petitioner was an arriving alien but because he posed a flight risk. (Id.).

The Court disagrees that Respondent's assertion that Petitioner posed a flight risk is in any way inconsistent with asserting his status as an arriving alien. However, even were that not the case, the Court fails to see the significance of an inquiry into Respondent's motives for raising specific arguments. The issue before this Court is whether the arguments that *are* raised have legal merit, regardless of a party's motives for asserting those arguments. Any detour by this Court into an examination of counsel's motives or states of mind would itself be a red herring and delay these proceedings unnecessarily. Thus, the Court rejects Petitioner's arguments regarding Respondent's purported lack of bona fides in raising what the Court considers to be a meritorious legal argument.

1    In light of the foregoing discussion, it bears further emphasis that nowhere in Petitioner's lengthy response to Respondent's objections does Petitioner ever challenge that fact that Petitioner is an arriving alien and was so classified by immigration authorities upon his initial detention in 2000. Nor does Petitioner respond directly to the legal conclusion that if Petitioner is an arriving alien, then the Immigration Judge lacks the legal authority to redetermine his custody status under federal law. In short, while Petitioner has much to say about Respondent's motives, Petitioner has no direct legal response to the core argument raised in Respondent's objections.

Because it cannot be reasonably disputed that Petitioner is in fact an arriving alien, because it appears that the Immigration Judge lacks legal authority to redetermine Petitioner's custody status as an arriving alien, and because no other constitutional or statutory principles appear to limit Respondent's exercise of discretion to determine Petitioner's custody status, there is no further relief the Court can afford Petitioner at this juncture.

**ORDER**

For the foregoing reasons, it is HEREBY ORDERED that the findings and recommendations issued on October 30, 2008 (Doc. 16), are WITHDRAWN.

**RECOMMENDATIONS**

Accordingly, the Court RECOMMENDS that the instant petition for writ of habeas corpus (Doc. 1), be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 30, 2009**                      **/s/ Theresa A. Goldner**
                                                                             UNITED STATES MAGISTRATE JUDGE